## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

MIMEDX GROUP, INC.,

       Plaintiff,

v.

SURGENEX, LLC, MARK DIAZ,
AND STEPHEN BLOCKER,

       Defendants.

Case No. 1:24-cv-02484-JPB

## MIMEDX GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND

This is a state court case that belongs in state court. There are no federal claims and, as shown below, there is no diversity jurisdiction. Plaintiff MiMedx Group, Inc. ("MiMedx" or "Plaintiff") therefore moves this Court, pursuant to 28 U.S.C. § 1447, for an Order remanding this case to the Superior Court of Cobb County, Georgia based on a lack of subject matter jurisdiction. Controlling Eleventh Circuit caselaw establishes that (1) it is Defendants' burden to establish all elements of diversity jurisdiction, and (2) any close calls or doubts on the question of diversity jurisdiction should be resolved in favor of remand. Because Defendants cannot establish complete diversity of citizenship, the case should be remanded.

**INTRODUCTION**

It is undisputed that Plaintiff, a healthcare business incorporated in Florida with its headquarters and principal place of business in Marietta, Georgia, is a citizen of both Florida and Georgia citizen for purposes of diversity jurisdiction. (Dkts. 1 ¶ 7; 1-1 ¶ 11.) It is also undisputed that none of the Defendants are Florida citizens, and that Defendants Sugenex and Blocker are not citizens of Georgia. The question presented in this Motion is whether Defendant Diaz was a Georgia citizen on the date that this lawsuit was filed. Despite the Defendants' creative efforts to demonstrate otherwise, the record demonstrates conclusively that Diaz was a Georgia citizen on that key date.

MiMedx filed this lawsuit on May 24, 2024. On that day, Diaz maintained a single residence: the home that he owns, and for which he declares a homestead exemption indicating it to be his primary residence, in Roswell, Georgia. In their removal papers, however, Surgenex and Diaz ask this Court to believe that Diaz was actually a citizen of Arizona – not Georgia – when the lawsuit was filed, based on his intent to establish a second residence at a rental apartment in Arizona beginning on June 1st. That argument fails.

The evidence conclusively establishes that Diaz's Georgia citizenship did not change until at least June 1, 2024, just over a week after the Complaint was filed. Thus, MiMedx shared its state of citizenship with Diaz on the day this lawsuit was

filed, diversity jurisdiction is precluded, the Court lacks subject matter jurisdiction over this action, and the case must be remanded to the Superior Court of Cobb County.

## STATEMENT OF FACTS

From 2012 through 2020, Diaz was employed by MiMedx and worked out of MiMedx's Cobb County, Georgia headquarters. (Dkt. 1-1 ¶ 29.) During the years that he worked for MiMedx, Diaz undisputedly was domiciled in and a citizen of the State of Georgia. (Dkt. 1-4 ¶ 8.)

After his employment with MiMedx, Diaz continued to be domiciled in the State of Georgia and purchased a house in Fulton County, Georgia, located at █ █ Roswell, Georgia █ . (Chandler Decl. ¶ 13, Ex. I.) As of today, Diaz is still claiming a homestead exemption on this Fulton County, Georgia residence. (*Id.*)[1]

---

[1] Rule 201 permits courts to take judicial notice of "a fact that is not subject to reasonable dispute because it[] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Because their accuracy cannot reasonably be questioned, courts may take judicial notice of "matters of public record." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277-78, 1280 (11th Cir. 1999). County tax statements and recorded warranty deeds are matters of public record that may be judicially noticed. *See, e.g., United States v. 2.50 Acres of Land, More or Less, in the Cnty. of Dade*, No. 02-20806-CV, 2008 U.S. Dist. LEXIS 113823, at *10 n.2 (S.D. Fla. June 10, 2008) (taking judicial notice of tax certificates and warranty deeds), *R.& R. adopted by* 2008 U.S. Dist. LEXIS 52685 (S.D. Fla. July 10, 2008); *see also Cordell Funding, LLLP v. Jenkins*, No. 11-

According to Defendants, for approximately a year (between the middle of 2023 and April 2024), Diaz had been traveling periodically from his home in the State of Georgia to the State of Arizona for purposes of conducting business for Surgenex. (Dkt. 1-4 ¶ 10.)[2] On his business trips to Arizona, Diaz would stay at a hotel. (*Id.*)[3] ████████████████████████████████

████████████████████████████████████████

██████████████████████ (Chandler Decl. ¶¶ 10, 11, Exs. F, G.)

Paperwork Diaz completed before this lawsuit was filed made clear that he was not moving to Arizona until June 2024. The lease he signed on an Arizona apartment shows that the lease did not begin until June 1, 2024. (Dkt. 1-4 ¶ 15; Chandler Decl. ¶ 6, Ex. B.) █████████████████████████████

████████████████████████████████████████

███████████ (Chandler Decl. ¶ 5, Ex. A █████████████████

███████████████████████.) Consistent with his Georgia residence

---

cv-80988-MIDDLEBROOKS, 2017 U.S. Dist. LEXIS 225184, at 9 n.5 (S.D. Fla. Mar. 14, 2017).

[2] Defendants declined MiMedx's request to produce records demonstrating Diaz's hotel stays in Arizona prior to April 2024, during which time Diaz claimed to be "living at the AC Hotel Scottsdale North." (Chandler Decl. ¶ 4; Dkt. 1-4 ¶ 10.)

[3] Defendants do not contend that Diaz stayed at an extended stay hotel with a month-to-month lease, or anything of the sort. ██████████████████████

████████████████████████████████████████ (Chandler Decl. ¶¶ 10, 11, Exs. F, G.)

throughout May 2024, Diaz registered his vehicle in Georgia on May 6, 2024. (Chandler Decl. ¶ 14, Ex. J.) ████████████████████████████████

████████████████████████████████████████████████████

(Chandler Decl. ¶¶ 8-9, Exs. D, E.)

On May 20, 2024, MiMedx sent a letter to Defendant Diaz announcing its intention to file this lawsuit. (Dkt. 1-1 ¶ 125.)[4] On May 24, 2024, MiMedx filed its complaint in the Superior Court of Cobb County. (Dkt. 1-1.)

## LEGAL STANDARDS

### A. 28 U.S.C. § 1441 Removal and Diversity Jurisdiction

Federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994), *superseded by statute in part as stated in Rannieri v. United Prop. & Cas. Ins. Co.*, No. 3:19-cv-00370, 2020 U.S. Dist. LEXIS 144844 (S.D. Tex. Aug. 5, 2020); *Wymbs v. Republican State Exec. Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377. Because federal court

---

[4] It was only *after* his receipt of that letter giving notice that a lawsuit was imminent that Diaz instructed Surgenex's Human Resources department to change his residence to Arizona, even though his lease had not begun. (Dkt. 1-4 ¶ 17.)

jurisdiction is limited, the Eleventh Circuit favors remand of removed cases when federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095. "[T]he rule of construing removal statutes strictly and resolving doubts in favor of remand . . . is well-established." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-29 (11th Cir. 2006) (citing, among others, *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("Statutory procedures for removal are to be strictly construed.")). The law of this Circuit is crystal clear: when a defendant removes a state court lawsuit to federal district court, any close call on the question of subject matter jurisdiction results in remand back to state court. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("All doubts about jurisdiction should be resolved in favor of remand to state court."); *Burns*, 31 F.3d at 1095 ("Removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").

Under the "complete diversity" rule, diversity jurisdiction is defeated if any plaintiff shares the same state citizenship with any defendant. *See, e.g., Riley v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 292 F.3d 1334, 1337-38 (11th Cir. 2002). Courts are instructed to remand a case to state court if they determine that the requirements of diversity jurisdiction do not exist. *See id.*

To overcome the presumption favoring remand, a defendant seeking removal bears the burden of establishing the existence of federal jurisdiction. *Fowler v.*

6

*Safeco Ins. Co. of Am.*, 915 F.2d 616, 617 (11th Cir. 1990) ("In a removal action, the burden is on the defendant, not the plaintiff, to plead the basis for jurisdiction."). The burden is a heavy one, as the party seeking removal must establish that upon a strict construction of the removal statutes, a federal court should take jurisdiction from the state court. *Syngenta*, 537 U.S. at 32.

## B. For Diversity Purposes, An Individual's Citizenship is Equivalent to Domicile

A party can have only one domicile at a time. *See Sprinkle v. Johnson*, No. 07-0713-WS-B, 2007 U.S. Dist. LEXIS 93373, at *11 (S.D. Ala. Dec. 19, 2007) (citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 367 (1st Cir. 2001)). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . . ." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (internal quotation marks omitted); *Spann v. Nw. Mut. Life Ins. Co.*, 795 F. Supp. 386, 390 (M.D. Ala. 1992).

Domicile requires (1) residence in a state and (2) an intention to remain in that state indefinitely. *Makozy v. Zimmerer*, 850 F. App'x 722, 724 (11th Cir. 2021) (citing *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013)); *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction;" domicile requires both residence in a state and "an intention to remain there indefinitely").

For diversity jurisdiction purposes, a person is a citizen of the state in which he is domiciled. *See McCormick*, 293 F.3d at 1257. In other words, in this context, "citizenship" means "domicile." *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).[5]

## C. Citizenship for Diversity Purposes is Determined at the Time the Complaint is Filed

Citizenship for diversity jurisdiction purposes is determined at the time the complaint is filed. *See Am. Found., Inc. v. Mountain Lake Corp.*, 454 F.2d 200, 202 (5th Cir. 1972) (diversity of citizenship is to be determined according to facts as they existed at time of institution of lawsuit); *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) (holding in a removal case that "[c]itizenship for diversity purposes is determined at the time the suit is filed"); *Harris v. Garner*, 216 F.3d 970, 983 (11th Cir. 2000) (same); 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3608 (3d ed. 2024) ("Whether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced.").

Subsequent facts or changes in the domicile of either party do not affect jurisdiction. *Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 358 (S.D. Ga. 1984).

The former Fifth Circuit commented on the rule as follows:

---

[5] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981.

> Certainty is also served by not allowing an event, whether a change in citizenship or the issuance of a state court order, occurring during the pendency of the suit to create jurisdiction; the parties and judge would encounter uncertainty in determining the existence of jurisdiction when crucial facts could change. Thus federal jurisdiction must be determined under the facts as of the date of the filing of the complaint.

*Gresham Park Cmty. Org. v. Howell*, 652 F.2d 1227, 1236 n.25 (5th Cir. 1981).

## **ARGUMENT**

Defendant Diaz was domiciled in Georgia at the time that the Complaint was filed. "A party can have only one domicile at a time." *Sprinkle*, 2007 U.S. Dist. LEXIS 93373, at *11. In determining domicile, courts have acknowledged the usefulness of certain presumptions:

> One such presumption is that the state in which a person resides at any given time is also that person's domicile. But because changes in residence are so common in this country, courts also refer to another presumption: once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state.

*Jones v. Law Firm of Hill & Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001) (citations omitted). As one district court in this circuit has explained:

> Once a person establishes a domicile, it continues until the person establishes a new domicile. In this circuit, it is elementary that, to effect a change of one's legal domicile, two things are indispensable: First, residence in the new locality; and second, the intention to remain there. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient.

*Audi Performance & Racing v. Kasberger*, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003) (citations and emphasis omitted); *see also Valentin*, 254 F.3d at 366 ("in order

9

to change domiciles, a person must move to a new state in which she intends to remain indefinitely"). In other words, when one's domicile is established, an effective change is accomplished only by (1) the act of taking up residence in a different domicile, with (2) the intent to remain there. *Mas*, 489 F.2d at 1399.

"[O]nce a [party] shows a former domicile, the presumption is that it continues to exist, and the burden shifts to the [other party] to present evidence that the domicile changed." *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007) (citation omitted); *see also Reynolds v. Wohl*, 332 F. Supp. 2d 653, 657 (S.D.N.Y. 2004) ("When . . . a party contends that it has changed its domicile, and that contention has been challenged by the opposing party, there is a presumption of continuing domicile that must be overcome."). This presumption imposes "a heavier burden on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one." *Audi Performance & Racing*, 273 F. Supp. 2d at 1226 (citation omitted). Moreover, in the removal context, "the burden on the question of [a defendant]'s domicile rests with defendants because it is they who seek a federal forum." *State v. Shell Oil Co.*, 444 F. Supp.2d 1210, 1216 (S.D. Ala. 2006).

"Timing is . . . vital in evaluating jurisdictional disputes, as domicile changes when the relevant criteria are met." *Frazier v. Se. Ga. Health Sys.*, No. CV 221-021, 2022 U.S. Dist. LEXIS 130623, at *7-8 (S.D. Ga. July 22, 2022) (citing *Angel v.*

*Reed*, No. 1:18-cv-211, 2019 U.S. Dist. LEXIS 201465, at *4-6 (M.D. Ga. Jan. 24, 2019) (emphasizing the importance of timing and holding the defendant did not change his domicile from Georgia to Florida until at least four days after the complaint was filed)). Diversity of citizenship must be present at the time the complaint is filed and is unaffected by subsequent changes in the citizenship of the parties. *Gavin v. Teraphysics Corp.*, No. 2:18-cv-532-FtM-38MRM, 2019 U.S. Dist. LEXIS 239771, at *2 (M.D. Fla. Apr. 16, 2019) (citing *Mas*, 489 F.2d at 1399).

Importantly to this case: "When a party's domicile changes during the period of time surrounding the filing of the complaint, the court must not only weigh[] the quantity and quality of his ties to the new domicile but also the bridges to the former domicile that still remain." *Adderley v. Three Angels Broad. Network, Inc.*, No. 18-23362-Civ-Scola, 2019 U.S. Dist. LEXIS 220848, at *8-9 (S.D. Fla. Dec. 23, 2019) (quoting *Gabriel v. G2 Secure Staff, LLC*, 225 F. Supp. 3d 1370, 1372 (S.D. Fla. 2016)). And "[w]hen confronted with an individual 'in transition,' courts favor the old residence as the domicile." *Albert Trostel & Sons Co. v. Vanlente*, No. 1:93:CV:108, 1993 U.S. Dist. LEXIS 6863, at *3 (W.D. Mich. Mar. 24, 1993).

The Complaint was filed on May 24, 2024. Thus, only facts regarding Defendant Diaz's domicile on or before May 24 are relevant. *See Chevaldina v. Katz*, 787 F. App'x 651, 653 (11th Cir. 2019) ("[D]iversity of citizenship must exist at the time an action is filed in order to be proper and events occurring after the filing of

an action cannot create or destroy diversity jurisdiction.") (citing *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 575-76 (2004) & *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016)). Defendant Diaz's scramble to establish a domicile in a foreign jurisdiction is thus irrelevant when it did not become effective until after MiMedx filed this action in the Superior Court of Cobb County.

The only home Diaz owned at the time the Complaint was filed was in Fulton County, Georgia, located at ███████████ Roswell, Georgia ████. (Chandler Decl. ¶ 13, Ex. I.) *Cordell Funding*, 2017 U.S. Dist. LEXIS 225184, at *11-12. Diaz declared and took a homestead exemption for his Georgia residence in 2023. (Chandler Decl. ¶ 13, Ex. I.) *Fish v. Merit Energy Co.*, No. 1:23-CV-00092, 2023 U.S. Dist. LEXIS 185645, at *7 (W.D. La. Sept. 9, 2023) (finding persuasive the state in which defendant's homestead exemption was located). On that date, the term of Diaz's apartment lease in Arizona had not yet begun.  In addition, on May 6, 2024, Defendant Diaz registered his vehicle in Georgia. (Chandler Decl. ¶ 14, Ex. J.) *See Simmons*, 592 F. Supp. at 356 ("Weighing heaviest of all in favor of . . . domicile is the grab-bag of indicia heaving to do with everyday life[,]" including the plaintiffs' "car registration").

Despite these well-established facts, Diaz argues in his removal papers that his domicile changed to Arizona on April 22, 2024, when he signed an agreement to accept a promotion at Surgenex. (Dkt. 1-4 ¶¶ 12-13.) But such an argument is

contrary to the facts and relevant case law because he cannot demonstrate a concurrent change in residency and an intent to remain indefinitely.

███████████████████████████████████████████████

███████████████ (Chandler Decl. ¶¶ 10, 11, Exs. F, G.) Diaz contends he was "living at" and "resid[ing]" at the AC Hotel, but such a claim is simply absurd. (Dkt. 1-4 ¶¶ 10, 16.) ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████ (Chandler Decl. ¶¶ 10, 11, Exs. F, G.) Such evidence cannot substantiate a claim that Defendant Diaz was residing at the hotel. *See Albert Trostel & Sons*, 1993 U.S. Dist. LEXIS 6863, at *2-3 ("[D]efendant's visit to a place he intended to move to does not make it his domicile on that date."); *Coggins v. Carpenter*, 468 F. Supp. 270, 278 (E.D. Pa. 1979) (finding the brief, transitory presence for two or three nights during an entire month was not sufficient to establish the requisite physical present or to demonstrate an intent to remain indefinitely). Moreover, Defendant Diaz's visits to Arizona during this time were for work purposes. Case law is clear that spending one's working time in a state is insufficient to establish domicile in that state. *See Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir. 1972*) (holding that spending most of one's working time in a state is insufficient to establish domicile in that state);

13

*Cordell Funding*, 2017 U.S. Dist. LEXIS 225184, at *11 (noting defendant only spent a few days a week in Florida, working). ███████████████████

██████████████████████████████████████████████

███████████████████████████████████ (Chandler Decl.

¶¶ 10, 11, Exs. F, G.)

██████████████████████████████████████████

██████████████████████████████████████

██████████████████ (Chandler Decl. ¶ 5, Ex. A ████████████

████████████████████████████.) *See Angel*, 2019 U.S. Dist. LEXIS

201465, at *6 (finding the most persuasive piece of evidence was the defendant's own statement that he would not start a new job until November 26 which was after the complaint was filed).  In addition, other publicly available information supports the conclusion that Diaz was a Georgia domiciliary when MiMedx filed this lawsuit. For example, on June 7, 2024, Defendant Diaz's LinkedIn page still showed him as in the "Atlanta Metropolitan Area." (Chandler Decl. ¶ 12, Ex. H.)

Defendant Diaz's removal papers suggest an intent to base his argument regarding Arizona citizenship on things such as his purchase of a car in Arizona and his act of obtaining an Arizona driver's license. But documents produced by his counsel demonstrate that these things happened after the Complaint was filed and are therefore entirely irrelevant. *Simmons*, 592 F. Supp. at 359 (ignoring certain

factors enumerated by the defendant as indicative of domicile because they were outside the relevant time period, stressing that diversity and jurisdiction are determined on the basis of the facts at the time the suit was filed and subsequent facts or changes in domicile do not after jurisdiction). ████████████

████████████████████████

████████████ (Chandler Decl. ¶ 9, Ex. E.) ████████████

████████████ (Chandler Decl. ¶ 8, Ex. D.) Defendant Diaz's apartment lease did not begin until June 1, 2024. (Dkt. 1-4 ¶ 15; Chandler Decl. ¶ 6, Ex. B.) ████████████████████████

(Chandler Decl. ¶ 7, Ex. C.) These facts all weigh against a finding that Diaz was a citizen of Arizona when the Complaint was filed in state court on May 24th. *E.g.*, *Coggins*, 468 F. Supp. at 277-78 (finding that although the plaintiff had signed a lease for a New York apartment, New York was not established as her domicile at the time the complaint was filed, in part because she did not take possession of the apartment until after the complaint was filed).

Moreover, while Defendant Diaz asserts that he is an Arizona citizen, "[c]ourts generally give little weight to a party's profession of domicile; they do so because these declarations are often self-serving." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342 (11th Cir. 2011) (citing 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3612, at

549 (3d ed. 2009)). Defendant Diaz's declaration is also generally vague as to the timing of his changed domicile, asserting facts "[a]s of today" – that is, as of the June 6th date he signed the declaration. As explained above, however, Defendant Diaz's current domicile is irrelevant. Rather, his domicile on May 24, 2024 is all that is relevant. And, as the foregoing evidence clearly establishes, Defendant Diaz was a Georgia domiciliary and citizen on May 24.

The *Angel* case, 2019 U.S. Dist. LEXIS 201465, is instructive. In that case, the plaintiff initiated the action in state court on September 24, 2018. *Id*. at *1. On November 9, 2018, the defendant removed the action, citing diversity of citizenship. *Id.* at *2. In support of his claim that he changed his domicile from Georgia to Florida, the defendant submitted a declaration (dated November 19, 2018) stating that he was presently a citizen of Florida and that he resided at a Florida address. *Id.* at *4-5. The defendant stated, and attached documentation, that he and his family shipped their belongings to Florida around September 4, 2018; that he changed his residency status with the U.S. Air National Guard to Florida on September 9; that he sold his Georgia house on September 10; that he purchased a Florida house; and that he replaced his Georgia driver's license with a Florida one. *Id.* at 5. The defendant also included an email discussion between himself and a Florida hospital regarding his potential employment there. *Id.* The court found that such evidence submitted by the defendant was insufficient to establish that he was domiciled in Florida when the

16

case was filed. *Id.* The court found persuasive that the defendant did not close on the purchase of his Florida home until September 28, did not change his address with the U.S. Postal Service until September 28, and did not obtain a Florida driver's license until October 19. *Id.* at *5-6. The court found most revealing of all was the defendant's statement that he would not cease providing medical service in Georgia and start a new job in Florida until November 26, 2018. *Id.* at *6. The court noted that while the defendant declared that he intended to become and remain a Florida citizen on September 10 (when he sold his Georgia home and moved his family to Florida), "intention to remain somewhere indefinitely is only half of the required showing." *Id.* The court held that change in domicile requires proof of physical presence, too, and the defendant had not demonstrated that he had a physical presence in Florida as of the date of filing the complaint. *Id.* Rather, the evidence indicated that the defendant did not establish a physical presence in Florida until late November. *Id.*

Other cases have reached the same result. *See Cordell Funding*, 2017 U.S. Dist. LEXIS 225184, at *8-11 (finding that defendant was not a Florida citizen, even though he was negotiating a deal to work in the Bahamas to which he would commute from Florida, he began negotiations to purchase a house in Florida, shipped his car to the Bahamas, entered into a partnership to own an aircraft in Florida, lived and worked in Florida a few days a week, and obtained a Florida phone number,

17

because the only home that defendant owned at the time the complaint was filed was in Georgia, his family was in Georgia, his driver's license was in Georgia, he paid taxes and was registered to vote in Georgia, and spending most of one's working time in a state is insufficient to establish domicile in that state); *Hendry*, 455 F.2d at 956-57 (finding defendant had not changed his domicile, even though he accepted a company promotion to Illinois, established his office in Chicago, occupied his office in Chicago, spent most working time in Chicago, moved into an apartment with most of his clothes and personal effects, and began looking for a home, because the only home he owned at the relevant time was in Mississippi, all of his household furnishing were there, his family still lived there, and he still voted as a Mississippi resident; finding defendant had proved only that at the relevant time, he had an intention to change his domicile at some future time); *Adderley v. Three Angels Broad. Network, Inc.*, No. 18-23362-Civ-Scola, 2019 U.S. Dist. LEXIS 220848, at *9 (S.D. Fla. Dec. 23, 2019) (finding because the defendant was still in transition between California and Florida when the lawsuit was filed, his domicile had not changed).

The record shows that Diaz was in the process of *preparing* to live in an Arizona apartment at the time that this lawsuit was filed. Evidence of those preparations to take up residence in Arizona when his new lease would begin on June 1st is not enough, however, for Defendants to carry their burden of establishing

that Diaz was a citizen of Arizona on May 24th. *E.g.*, *Albert Trostel & Sons*, 1993 U.S. Dist. LEXIS 6863, at *2-4 (finding defendant had not changed his domicile even though he accepted a job in Pennsylvania and he was in Pennsylvania for three days before his personal property was packed for moving because "defendant's visit to a place he intended to move to does not make it his domicile on that date" and "[w]hen confronted with an individual 'in transition,' courts favor the old residence as the domicile"); *Coggins*, 468 F. Supp. at 277-79 (finding defendant had not changed her domicile even though she signed a lease June 27 as she did not take possession until July 15 and the complaint was filed July 3).

Plans and desires to establish a domicile at another location in the future do not effectuate that change of domicile before the actual move to another jurisdiction has actually taken place. *Branch Banking & Tr. Co. v. Soleil Energy Sols., LLC*, No. 1:16-CV-1505-MHC, 2017 U.S. Dist. LEXIS 153111, at *10 (N.D. Ga. Jan. 18, 2017) ("[A] good-faith desire to change [] domicile in the future, [] is insufficient to effect change in domicile today.").

## CONCLUSION

Defendant Diaz was a Georgia citizen on the date that MiMedx filed this lawsuit in the Superior Court of Cobb County. Thus, one of the named Defendants shared its state of citizenship with MiMedx on the day this lawsuit was filed. Diversity jurisdiction therefore does not exist, and the Court lacks subject matter

jurisdiction over this action. For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order pursuant to 28 U.S.C. § 1447, remanding this case to the Superior Court of Cobb County.

Respectfully submitted this 21st day of June, 2024.

**ALSTON & BIRD LLP**

*/s/ Christopher C. Marquardt*
Christopher C. Marquardt
Georgia Bar No. 471150
chris.marquardt@alston.com
Nicholas Chandler
Georgia Bar No. 110451
nick.chandler@alston.com
Leigh Shapiro
Georgia Bar No. 408330
leigh.shapiro@alston.com

1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Fax: (404) 881-7777

*Attorneys for Plaintiff MiMedx Group, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document was prepared using Times New Roman font, 14-point type, which is one of the font and print selections approved by the Court in L.R. 5.1(B).

This 21st day of June, 2024.

*/s/ Christopher C. Marquardt*
Christopher C. Marquardt

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused a copy of the foregoing to be served upon all counsel of record via the Court's CM/ECF system.

This 21st day of June, 2024.


*/s/ Christopher C. Marquardt*
Christopher C. Marquardt